**AFFIRMED as MODIFIED; and Opinion Filed May 5, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01262-CV**

**IN THE INTEREST OF M.A.C., JR., A CHILD**

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-21-00276-W**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

Mother appeals from the trial court's final order in a suit affecting the parent-child relationship in which the trial court terminated her parental rights, appointed the Department of Family and Protective Services (the Department) managing conservator, and appointed Father as possessory conservator of M.A.C. Father has not appealed. For the reasons discussed below, we affirm as modified the trial court's final order.

### Factual and Procedural Background

On March 26, 2021, the Department filed a suit affecting the parent-child relationship and sought protection and conservatorship of M.A.C., a child, and for

termination of Mother and Father's parental rights of M.A.C. In her affidavit in support of removal, Department investigator Samantha Barnett testified that the Department received a referral alleging neglectful supervision of M.A.C. shortly after he was born based on Mother's parental rights of another child being previously terminated. Barnett contacted Mother and performed an oral swab test for drugs. Because the test was positive for amphetamines and methamphetamines, emergency removal of M.A.C. was approved. Due to Mother's failure to cooperate and threats by Mother's father, the Department sought a writ of attachment for the assistance of law enforcement in removing M.A.C. On March 29, 2021, the trial court signed a writ of attachment and an ex parte order for emergency care, appointing the Department as temporary managing conservator of M.A.C. M.A.C. was two months old at the time. The Department was unable to secure custody of M.A.C. until April 8, 2021, at which time Mother's father gave M.A.C. to investigator Barnett.

The Department considered Mother's father and mother for kinship placement, but neither were selected as a placement option. Mother's mother was already caring for Mother's older children and declined the opportunity to be considered, and the Department concluded that Mother's father was unable to supervise or provide for the child's needs based on his refusal to provide the necessary information needed for a formal home assessment.

Following a temporary orders hearing on April 8, 2021, the trial court ordered Mother and Father to complete the following services in order for M.A.C. to be

returned to their care: a psychological or psychiatric evaluation, counseling, parenting classes, drug and alcohol testing, and any other requirement set out in the Department's service plan. The Department remained temporary managing conservator and Mother and Father were appointed possessory conservators with limited access. M.A.C. was placed in foster care as none of the placements suggested by Mother were approved.

According to the Department's permanency reports, neither Mother nor Father completed their services as ordered. Mother also wrote a letter to the foster parents that was inappropriate and, as a result, the foster parents sought new placement for M.A.C. At her May 21 visitation, she refused to give M.A.C. to the caseworker until M.A.C. was evaluated at the emergency room. She was concerned with two dry spots on his chest and stomach, a diaper rash, and congestion. A Department supervisor and security guard had to be called and Mother's father had to be asked to leave because he instigated the incident and was verbally aggressive.

Mother and Father contested termination and sought to be appointed managing conservators. The trial court heard brief testimony from Mother on August 15, and recessed the trial until October 20, at Mother's request. Because the trial was continued, the court considered Father's motion for placement and ordered M.A.C. to be placed with Y.M., the mother of Father's other child. Mother was given limited, supervised visitation due to her prior behavior in contacting M.A.C.'s caregivers and her behavior before the trial court. On November 17, 2022, the trial

court entered a final order appointing the Department as managing conservator, appointing Father as possessory conservator, and terminating Mother's parental rights. The trial court made the following relevant findings:

- appointment of a parent or both parents as managing conservator would not be in the best interest of the child;

- appointment of the Department as permanent managing conservator is in the best interest of the child;

- the child is currently placed with Y.M., and Y.M. agrees to participate in the "Fostering Connections Program";

- regardless of whether Y.M. becomes licensed under the Program, the Department shall transfer permanent managing conservatorship to Y.M. absent unforeseen circumstances that would warrant removal of the child;

- appointment of Father as possessory conservator is in the best interest of the child;

- termination of the parent-child relationship between Mother and M.A.C. is in the best interest of the child;

- Mother knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, pursuant to TEX. FAM. CODE ANN. § 161.001(b)(1)(D);

- Mother engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to TEX. FAM. CODE § 161.001(b)(1)(E); and

- Mother failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the child, pursuant to TEX. FAM. CODE § 161.001(b)(1)(O).

The trial court also ordered that Mother shall receive photographs of the child and an update on the child's welfare on certain dates each year.

Mother timely appealed and presents eight issues for our review: (1) the judgment is void because the trial court's jurisdiction was not properly extended pursuant to section 263.401 of the family code; (2) the trial court erred in terminating Mother's parental rights when the Department announced at the hearing that it was abandoning its request for termination of Mother's parental rights; (3) Mother received ineffective assistance of counsel; (4) Mother's due process rights were violated; (5)–(6) the evidence is legally and factually insufficient to support the best interest finding; (7) the evidence is legally and factually insufficient to support the appointment of CPS as the managing conservator; and (8) the final order of termination should be modified to properly reflect the dates Mother is to receive email communication regarding the child.

## Trial Court's Jurisdiction

Mother argues in her first issue that the trial court lost jurisdiction to hear the case when it did not enter a proper extension order by the one-year dismissal date for department-initiated termination suits pursuant to section 263.401 of the Texas Family Code. She contends that the trial court granted a continuance of the trial setting on February 7, 2022, to the date of dismissal on April 4, 2022, but failed to extend the setting past the dismissal date. The Department argues that the trial court did not lose jurisdiction because it properly extended the automatic dismissal

–5–

deadline, as documented by its order nunc pro tunc, from April 4, 2022, until August 19, 2022.

Section 263.401 governs a trial court's jurisdiction over suits affecting the parent-child relationship filed by the Department in which the Department seeks termination of the parent-child relationship or conservatorship of the child. Tᴇx. Fᴀᴍ. Cᴏᴅᴇ § 263.401(a). Unless the court has commenced the trial on the merits or granted an extension, the court loses its jurisdiction over the suit on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator. *Id.*; *In re G.X.H.*, 627 S.W.3d 288, 295 n.4 (Tex. 2021) (explaining expiration of deadline without extension or commencement of trial is jurisdictional). Section 263.401 further provides:

> (b) Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:

> (1) schedules the new date on which the suit will be automatically dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);

> (2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and

> (3) sets the trial on the merits on a date not later than the date specified under Subdivision (1).

TEX. FAM. CODE § 263.401(b).  Therefore, to retain its jurisdiction, the trial court must grant an extension, before the dismissal date passes, supported by findings that extraordinary circumstances necessitate the child remaining in the Department's temporary managing conservatorship and that continuing the appointment of the Department as temporary managing conservator is in the child's best interest.  *In re G.X.H.*, 627 S.W.3d at 295–97.

The parties do not dispute, and our review of the record confirms, that the trial court rendered an order appointing the Department temporary managing conservator on March 29, 2021, making April 4, 2022, the original one-year dismissal date. Thus, unless the trial court commenced trial or granted an extension as permitted under section 263.401 by April 4, the suit was automatically dismissed on April 4, and any orders entered after that date were void.  *See id.* at 296.

Trial was initially set for February 7, 2022.  Mother filed a Motion for Continuance and Extension of Dismissal Date on January 27, 2022, and an amended motion on January 28.  Mother alleged that the following extraordinary circumstances necessitated the child remaining in the temporary managing conservatorship of the Department: (1) her attorney was appointed on May 21, 2021; (2) she was making progress with her services, but they were delayed due to her incarceration in the Dallas County Jail for approximately four months; (3) the issue

–7–

of paternity had come into question and Father was requesting paternity testing; and (4) she needed more time to pursue additional home studies. In the motion, Mother specifically requested that the trial court extend the April 4, 2022 dismissal date. Father also filed a motion for continuance on January 28, 2022, and did not contest Mother's continuance or request for extension.

On February 2, 2022, the trial court entered an order of extension extending the dismissal date until April 4, 2022, and setting the new trial date for that same day. The order further provided that the trial court found that it was in the best interest of the child and necessary for the administration of justice to extend the pendency of the case pursuant to section 263.401(b). The trial court further found that extraordinary circumstances necessitated the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator was in the best interest of the child. The order included the following as extraordinary circumstances: (1) an opportunity to pursue additional home studies; (2) additional time for Mother to complete her services; and (3) paternity testing.

On April 4, the Department filed a motion for judgment nunc pro tunc contending that the February 2, 2022 order of extension contained a clerical error: the incorrect date for the extension of the dismissal deadline. The Department claimed that the order should have stated that the date of dismissal was extended until August 19, 2022, not April 4. On April 5, 2022, the trial court signed a Nunc

Pro Tunc Order of Extension changing the date of dismissal on the order from April 4 to August 19. The order no longer provided a date for a trial setting, but other documents show that the trial date was set for August 15, 2022.

Although the parties contest whether the trial court's change was clerical, making it a proper nunc pro tunc order, or judicial, we conclude that the trial court properly extended the dismissal deadline by its April 4 docket entry and, thus, we do not reach the nunc pro tunc issue.

As explained by the supreme court, section 101.026 of the family code provides that a court may pronounce or render an order on its docket sheet. *Id.* at 297–298 (citing TEX. FAM. CODE § 101.026) ("pronouncement may be made orally in the presence of the court reporter or in writing, including on the court's docket sheet or by a separate written instrument")).

The docket entries for February 7, 2022, and April 4, 2022, appear below:

304TH DISTRICT COURT
**CASE SUMMARY**
CASE NO. JC-21-00276

| | |
|---|---|
| 02/07/2022 | **TBC - TRIAL BY COURT** (8:30 AM) (Judicial Officer: MARTIN, ANDREA) *PER msg from RF ATTY = HAS CONFLICT 2/7 AND MFC FOR DNA AND RM FILED MFC TOO --------RESET TRIAL TO DOD DATE PER SCHEDULE ORDER. NOTES IN TEAMS CHAT* |
| 04/04/2022 | **TBC - TRIAL BY JURY** (8:30 AM) (Judicial Officer: MARTIN, ANDREA) *R/S PER MFC/EXT* |

The February 7 entry resets the trial from February 7 to the date of dismissal in the scheduling order, which is April 4. The April 4 entry resets the trial per the motion for continuance and extension but does not include a new date. Like the supreme

court in *G.X.H.*, "[w]e conclude the only reasonable interpretation of this [April 4] docket entry . . . is that the trial court granted both a continuance of the trial date and an extension of the automatic dismissal date under section 263.401(b)." *Id.* at 298. Unlike *G.X.H.*, it is unclear whether the trial court held a hearing on April 4 to make the necessary findings to support the extension. *See id.* at 299 ("Where, as here, the trial court held an oral hearing on the proposed extension and the parties failed to bring forth the record of that hearing on appeal, we will presume the trial court made the necessary findings to support the extension orally on the record at the hearing."). However, Mother's January motion for continuance asserted such facts were present to support the necessary findings, and the trial court made those findings in its February 2 written order. No other motion for continuance was filed in the interim. Therefore, under this record, we conclude the trial court made the findings necessary to retain this case on its docket and extended the dismissal date prior to its expiration.

Although the requirement of the trial court to grant an extension supported by the necessary findings is jurisdictional, which the trial court satisfied as discussed above, section 263.401(b)'s requirement that the trial court enter an order scheduling a new dismissal date, making further temporary orders as necessary for the child, and setting a new trial date is not jurisdictional. *Id.* at 300–301. Therefore, any complaint regarding the trial court's failure to render such order before the initial dismissal date must be preserved for appellate review. *Id.* at 301. Because Mother made no objections to the trial court's April 5 order setting the new dismissal date

–10–

as August 19, participated in the August 15 trial without objection, requested that the August 15 trial be continued, and participated in the October 20 trial without objection, Mother has waived any complaints about the trial court's April 5 order setting the new, extended date of dismissal. *See* TEX. R. APP. P. 33.1(a). Mother's first issue is overruled.

## Proceeding to Termination

Mother argues in her second issue that the trial court erred in terminating Mother's parental rights when the Department unequivocally announced that it was abandoning its request for termination of Mother's parental rights. We disagree that the Department unequivocally abandoned its request for termination.

When a party abandons a claim in its live pleading, that pleading will no longer support a judgment on the abandoned claim. *In re T.M.*, No. 07-20-00103-CV, 2020 WL 4773207, at *2 (Tex. App.—Amarillo Aug. 17, 2020, no pet.) (mem. op.). Whether a party has abandoned a pleading is a question of law that we review de novo. *In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.). A stipulation may form the basis for abandonment. *Id.* A stipulation is an agreement, admission, or concession made in a judicial proceeding regarding a related matter. *Id.* When the stipulation limits the issues to be tried, such issues are excluded from the trier of fact's consideration. *Id.* Therefore, when a party unequivocally states in open court it no longer seeks the pleaded relief, it abandons its pleading. *See In re T.M.*, 2020 WL 4773207, at *3 (caseworker expressly stated Department was not

seeking termination, confirmed Department was not seeking termination when attorney sought to clarify, and Department conceded on appeal it had abandoned its termination pleading). However, if a stipulation is ambiguous or unclear, the trial court should disregard it. *In re C.C.J.*, 244 S.W.3d at 921. When construing a stipulation, we are to determine the intent of the parties from the language used in the agreement presented to the trial court. *Id.* We consider the surrounding circumstances in making our determination. *Id.*

Here, the following exchange took place before the trial court resumed trial on October 20:

> THE COURT: All right. [Department], you can proceed with the other case.
>
> [DEPARTMENT]: Thank you. We have had -- just for the record, Your Honor, we have had a slight change since the last time we met with [Mother] on the stand. The Department at this time is seeking permanent managing conservatorship of [M.A.C.]. We're abandoning the termination grounds. The Department will be seeking PMC of [M.A.C.] pending F-Con with an ultimate transfer for [Y.M.] and possessory with each parent. And, I do believe [Father] is in agreement with that. I think the only person that doesn't agree is [Mother].
>
> THE COURT: Okay. Is that correct, [Mother's counsel], your client doesn't agree to PMC to her mother -- well, to the Department for F-Con?
>
> [MOTHER'S COUNSEL]: She does not agree with that. It's my understanding that she does not agree with the placement and the visitation that -- as set up at this time.
>
> THE COURT: [Department], you can call your first witness.
>
> [MOTHER'S COUNSEL]: I think the biggest issue is her access.

–12–

THE COURT: It sounds like you said she doesn't agree with PMC or access, so, we'll go ahead and start the trial on termination, I guess.

[Department], you can call your first witness.

The Department's counsel then continued its questioning of Mother from August 15. Shortly thereafter, Mother's counsel stated, "Your Honor, I believe my client has a misunderstanding of the purpose of the hearing today. May I request a short recess to confer with her?" The trial court granted a short recess and stated, "When we come back, again, we are here for a termination trial, and the Court will hear testimony about whether or not the mother's rights should be terminated. I understand the father has an agreement for non-termination, but the issue today is termination for the mother." When the parties returned, Mother's counsel explained that Mother believed the trial would be before a jury, not the bench; however, neither Mother nor counsel voiced any concerns about proceeding generally with a termination trial.

Later, when the Department caseworker was testifying, the trial court again clarified whether the Department was continuing to seek termination of Mother's rights:

THE COURT: Ma'am, I have a question for you, and it's following up on what the attorney for the -- the guardian asked you, 'cause it -- I -- it seems to me there were two different answers. I just need to be clear. So, there was a request for the father to be named as a possessory conservator with placement with the person in Houston, and your attorney was proving up grounds for termination of the mother.

–13–

Is it -- are you saying now that you don't want -- that the Department is not pursuing termination of the mother, you're just pursuing PMC for both of them?

THE WITNESS: No. I'm sorry, Judge. Termination on the mother, and if I'm saying this correctly PMC, possessory -- I can't say it.

THE COURT: Basically, no termination for the father, termination for the mother. Is that what the Department's asking?

THE WITNESS: Yes.

Mother argues that the trial should have been limited to issues of conservatorship and access and that the trial court's insistence that it be a termination trial was improper and incorrect and forced the Department to proceed with termination. However, we cannot conclude that the Department made a clear, unequivocal statement that it was abandoning its pleading seeking to terminate Mother's rights on this record. The Department did not object to continuing to a termination trial, or correct the trial court's understanding, after Mother's counsel confirmed that Mother did not agree to the placement. The parties asked questions regarding grounds for termination throughout the trial and, as shown above, the Department's caseworker confirmed during her testimony that the Department was still seeking termination of Mother's rights. The parties also asked questions regarding Mother's visitation and access if the trial court chose not to terminate Mother's rights. Thus, the record in this case does not show a clear and unambiguous abandonment by the Department of its pleading to terminate the parent-child

–14–

relationship between Mother and M.A.C. *See id.* at 921–22. We conclude that the issues of termination, conservatorship, *and* access were properly before the court, and the trial court did not err in considering termination. Mother's second issue is overruled.

## Sufficiency of the Evidence

In her fifth, six, and seventh issues, Mother argues the evidence is legally and factually insufficient to support the finding that termination was in the best interest of the child or to support the appointment of CPS as the managing conservator. We disagree.

### A. *Standard of Review*

The involuntary termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE § 161.001(b). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. To terminate parental rights, the evidence must show that the parent committed one of the acts enumerated in section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* § 161.001(b).

In determining whether the evidence is legally sufficient in a parental termination case, we review all the evidence in the light most favorable to the trial court's finding and determine whether a rational trier of fact could have reasonably formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d

256, 266 (Tex. 2002). We resolve any disputed facts in favor of the finding unless a reasonable factfinder could not have done so, and we disregard all evidence a reasonable factfinder could have disbelieved or found incredible. *Id.*

In conducting a factual sufficiency review, we give due deference to the trial court's finding and determine if, based on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam); *In re C.H.*, 89 S.W.3d 17, 25–27 (Tex. 2002). The trial court is the sole arbiter of the credibility and demeanor of the witnesses, and we shall not supplant the factfinder's judgment with our own. *In re H.R.M.*, 209 S.W.3d at 108–09. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

## B. Evidence Presented

The evidence at trial showed that Mother had not completed her court ordered services at the time of trial. In fact, she had not submitted to any of the drug tests requested by the Department during the pendency of the case. And, the people Mother recommended for placement were either not approved by the Department or did not want to pursue becoming a placement option because of past interactions with Mother. The trial court had cautioned Mother at the trial on August 15 that, if

she wanted to be considered as a managing conservator, she needed to complete her services and that, if she wanted anyone else to be considered, she needed to submit their information to the Department so that it could complete a home study. She did neither.

Instead, at the October 20 continuation of trial, Mother insisted that she had completed counseling and submitted drug testing, just not for CPS. During the pendency of the case, Mother was arrested for possession of a controlled substance and for theft. According to Mother, she and Father were arrested together in August 2021, and Father had over twenty grams of Fentanyl and over twenty grams of methamphetamine that he "was working" for an organization. She testified that she completed drug testing and counseling as ordered for community supervision in the criminal case. She offered to share the results with CPS, but the Department had no record of any such test results. The Department caseworker testified she sent Mother multiple messages each month, beginning in April 2021, requesting Mother to go drug test, but Mother failed to do so. The evidence also showed that her community supervision was amended in April 2022, to include a requirement that she successfully complete a substance abuse program. According to Mother, she had not violated probation and was not using methamphetamines.

Mother denied that she tested positive for methamphetamine at the time M.A.C. was removed from her care; she believed the caseworker tampered with her test to make it show she was positive when she was not. She also denied testing

–17–

positive for marijuana and amphetamines at the time her older son was removed from her care. Mother's two older children were under the care of her mother, one through a placement with the Department and one through a court order but not through the Department. According to her caseworker, drugs had been an issue with M.A.C. and her prior children; all three children had been the subject of a CPS case.

Mother did complete a twelve-week parenting class and believed she had completed her psychological assessment and corresponding recommendations. However, the Department caseworker testified that Mother had not completed counseling, the recommendations of counseling, or an individual outpatient program. The caseworker testified that Mother had been discharged from individual counseling for poor attendance and lack of participation; Mother disagreed. If Mother had completed counseling elsewhere, the Department was unaware as it had not received any documentation verifying Mother's claims.

Mother also testified that she lived with her father, and the Department was supposed to do another home study but did not. She had been working part time. The caseworker testified Mother had not demonstrated that she had a stable living environment, was gainfully employed, or that she could support M.A.C.

Mother was very concerned about M.A.C. being placed with Y.M. She did not know Y.M., but Y.M. was the mother of one of Father's other children and she was concerned about Father having access to Y.M. Mother did not believe M.A.C. would be safe with Father because of his character and criminal history. He sold

–18–

drugs for an organization and, although he no longer worked for the organization, he was hiding from them because he owed them money. He also committed aggravated robbery in January 2022. Mother was further concerned that Father was going to leave the state with M.A.C. Father told her that M.A.C. being placed with Y.M. "was his way to get [her] child, and that CPS and [Mother] couldn't stop him from taking the child away."

Mother was also concerned about Y.M.'s move to Houston since first being approved for placement. Mother was specifically concerned about the distance between them because she could not afford to go. Mother testified that she would like the opportunity to talk with Y.M. since Y.M. had custody of her son. She was aware of the allegations that she had harassed Y.M. but denied them.

The caseworker testified that M.A.C. was doing great in Y.M.'s care. He was growing up, talking more, able to engage, and socially interacted with other children around his age. He did not have any medical issues and was going to start daycare. The caseworker further testified that Father's visits would be supervised and that Y.M. had not shown the Department any reason why she would not be protective of M.A.C. The caseworker believed it was in M.A.C.'s best interest to be placed with Y.M., as neither parent would provide a safe environment for him.

On cross-examination, the caseworker agreed that Mother's virtual visits with M.A.C. had gone well and that she interacted well with him. The caseworker also testified that Mother expressed concern about not being able to bond with M.A.C. if

–19–

she could not see him in person. The caseworker agreed it was important for a mother to have in-person contact with her child and believed it would be in M.A.C.'s best interest to have in-person access. However, the caseworker later testified that the Department believed termination of Mother was in the best interest of M.A.C. even if Mother was in agreement with the placement. The CASA representative also recommended termination for Mother.

Y.M. testified that she understood Father had to be supervised at all times with M.A.C. and that she was ensuring he was supervised. She had taken M.A.C. to Dallas to visit his siblings and planned to facilitate future visits. As to the threatening and harassing messages, Y.M. testified that Mother finds her family and friends, almost anyone that she has contact with, and harasses them (mainly through Facebook) or tells them Y.M. is kidnapping M.A.C. Y.M. was concerned for her and her family's safety and testified she was afraid to supervise Mother with M.A.C. She was not willing to speak to Mother and did not feel like it would be in M.A.C.'s best interest for her to communicate with Mother.

At the August 15 setting, after being told multiple times to remain quiet while the trial court spoke to the attorneys but refusing to do so, the trial court admonished Mother as follows: "Your behavior is affecting - - will further restrict your access to this child. If you can't control yourself, that makes the Court concerned about your ability to parent." Mother continued to have outbursts throughout the October 20 Zoom trial, and the trial court had to mute her and later had to remove her because

–20–

she was showing items on her screen without permission. At the conclusion of the October 20 trial, the court stated that it was concerned that Mother's behavior had not "come down at all" since the beginning of the case. The trial court further stated it was concerned with her ability to control her impulses and her continued use of drugs or failing to provide proof that she had tested with another program.

In concluding that Mother failed to do the services that the court ordered, the trial court stated, "What she did was everything else but that, and then had reasons and excuses about why she did everything else but what the Court ordered her to do." The trial court also advised that "typically . . . when a modification happens, it's usually because there's some dirty tests."

## C. Sufficiency of the Evidence to Support Best Interest Finding[1]

When deciding whether termination is in the child's best interest, we look to certain non-exclusive factors identified by the supreme court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals

---

[1] Mother does not challenge the sufficiency of the evidence to support the trial court's findings that she committed three of the enumerated acts: knowingly placed or knowingly allowed M.A.C. to remain in conditions or surroundings which endangered his physical or emotional well-being, engaged in conduct or knowingly placed M.A.C. with persons who engaged in conduct which endangered his physical or emotional well-being, and failed to comply with the provisions of the court's order that specifically established the actions necessary for Mother to obtain the return of M.A.C. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (O).

–21–

to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holly*, 544 S.W.2d at 372. "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d at 27.

1.  *The desires of the child.*

Both Mother and the Department agree that M.A.C. was too young to express his desires and, thus, evidence regarding this factor was not at issue.

2.  *The emotional and physical needs of the child now and in the future and the emotional and physical danger to the child now and in the future.*

Mother asserts that there is no evidence regarding the emotional and physical needs of M.A.C. but, as to the emotional and physical danger to M.A.C., she concedes that her positive drug test and the fact that her community supervision conditions were modified might support a finding that termination is in M.A.C.'s best interest. The Department highlights that Mother was incarcerated for four months for possession and theft and is currently on probation. Her "track record of habitual drug use, consequences of her addiction, and lack of testing indicated a

high likelihood that she would be unable to provide for M.A.C." The Department also contends that Mother's inability to provide a stable living environment, lack of personal control, consistent impulsive behavior, and harassment of others involved in the case could cause emotional and physical danger to M.A.C.

While the evidence does not speak to the specific needs of M.A.C., we agree with the Department that the evidence shows Mother is unable to care for a child either because she could not meet the child's needs or because she would place the child in danger due to her continued drug use, or assumption of drug use for refusing to report to CPS testing, and her behavior toward the trial court, the Department, and placement options throughout the case.

3. *The parental abilities of the individuals seeking custody.*

Mother again contends that there is no evidence supporting this factor. We disagree. As the Department asserts, Mother was unable to parent her previous children and they were removed from her home. Mother's past performance as a parent could certainly have a bearing on her fitness to provide for M.A.C. *See id.* at 28 (concluding court of appeals erred in not considering father's prior history of child neglect as a factor bearing upon the finding that termination would be in the child's best interest).

4. *The programs available to assist these individuals to promote the best interest of the child.*

There was no evidence presented at trial regarding outside programs to assist the parties besides the services offered to Mother to help her reunite with M.A.C. As discussed above, Mother did not complete those services as directed.

5. *The plans for the child by these individuals or by the agency seeking custody and the stability of the home or proposed placement.*

Mother testified that she was living with her father and that he could have been reconsidered for placement. But the evidence showed that father's home was unsuitable and that his initial home study had been denied. Additionally, her father had threatened staff, instigated a situation at one of Mother's supervised visitations in Dallas, and had to be removed from the final hearing. Thus, Mother's plans for M.A.C. were not in his best interest.

The only other evidence regarding plans for the child was Y.M.'s testimony that she wanted to continue to facilitate visits between M.A.C. and his siblings in Dallas. Continuing a healthy relationship between family members would be in the best interest of a child.

6. *The acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one and any excuse for the acts or omissions of the parent.*

As to these factors, Mother argues that her virtual visits had gone well and there was no evidence she was inappropriate with M.A.C. She could not see M.A.C. in person because she could not travel to Houston. The Department acknowledges

–24–

that Mother may not have acted inappropriately toward M.A.C., but she did toward others. The Department argues that Mother's aggressiveness toward anyone who opposed her raised concerns about whether she would also be aggressive in parenting M.A.C. In addition to her inability to control her outbursts, Mother did not take responsibility for her actions. She denied she tested positive for methamphetamines and blamed her positive test on the caseworker. She and her father believed the Department were out to get her and take her child without cause. She blamed the lack of drug tests and counseling on the Department and her probation officer instead of taking responsibility for not completing them or not providing the proper paperwork to the Department. Mother's failure to complete her services, failure to take responsibility for her actions, and failure to control her behavior support a finding that termination of her parental rights is in the best interest of M.A.C.

Based on our review of the record, we conclude that the evidence is legally and factually sufficient to support a firm belief or conviction that terminating the parent-child relationship between Mother and M.A.C. was in the best interest of the child. We overrule Mother's fifth and sixth issues.

### D. Sufficiency of the Evidence to Support Appointment of CPS as Managing Conservator

In her seventh issue, Mother argues that, because the evidence is insufficient to support a finding that termination of Mother's rights was in M.A.C.'s best interest, the preponderance of the evidence proved that appointment of Mother as managing

conservator would not significantly impair M.A.C.'s physical health or emotional development. As discussed above, we disagree that the evidence is insufficient to support the trial court's finding that termination of Mother's rights is in the best interest of M.A.C. The trial court further found that appointing Father as managing conservator would significantly impair M.A.C.'s physical health or emotional development. Mother has not challenged the trial court's finding regarding Father, and the evidence supports such a finding as Father had also not completed his services with the Department and agreed to being appointed a possessory conservator with limited and supervised access to M.A.C.

As this Court has previously explained, "we have overruled appellant's challenge to the termination, and the trial court's appointment of the Department as sole managing conservator may be considered a 'consequence of the termination pursuant to Family Code section 161.207.'" *In re N.T.*, 474 S.W.3d 465, 481 (Tex. App.—Dallas 2015, no pet.) (citation omitted); *see also* TEX. FAM. CODE § 161.207(a) ("If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child."). Thus, having terminated Mother's rights and finding that appointing Father as managing conservator would not be in M.A.C.'s best interest, the trial court properly appointed the Department. We overrule Mother's seventh issue.

## Ineffective Assistance of Counsel

In her third issue, Mother asserts that she received ineffective assistance of counsel. Specifically, Mother argues that counsel's performance was deficient when counsel failed to object to the trial court proceeding on the issue of termination and to any questions regarding termination and when she essentially proved that termination was in the child's best interest by asking the caseworker that question.

The statutory right to counsel for an indigent parent in a termination proceeding "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see also* TEX. FAM. CODE § 107.013(a)(1) (court shall appoint attorney ad litem to represent indigent parent in suit filed by Department seeking termination of parent-child relationship). We apply the test outlined for criminal proceedings in *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether counsel was effective. *In re M.S.*, 115 S.W.3d at 544–45. To prevail on a claim of ineffective assistance of counsel, the appealing party must show that counsel's performance was deficient and that counsel's errors were so serious as to deprive the parent of a fair trial with a reliable result. *Id.* at 545. When determining whether counsel was effective, we consider all circumstances of the case and "must give great deference to counsel's performance, indulging a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id.* (quoting *Strickland*, 466 U.S. at 689). "It is only when 'the conduct was so outrageous that no competent attorney

would have engaged in it,' that the challenged conduct will constitute ineffective assistance." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Mother first argues that counsel was deficient for failing to object to the trial court's decision to proceed to a termination trial and to any questions regarding counsel. When a party claims ineffective assistance of counsel for failing to object, the party must demonstrate that the trial court would have committed error in refusing to sustain the objection if counsel had objected. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). We conclude, as discussed above, that the trial court properly proceeded with a termination trial because the Department did not abandon its termination pleadings once the court confirmed that Mother contested M.A.C.'s placement and the Department's proposed visitation schedule.

We next turn to whether counsel was deficient in questioning the Department's caseworker about whether she believed termination was in the child's best interest. Although counsel's question to the caseworker resulted in the caseworker testifying that the Department believed it was in M.A.C.'s best interest for Mother's parental rights to be terminated, we cannot conclude on this record that counsel's performance fell below an objective standard of reasonableness. Here, after the trial court questioned the Department about whether it was seeking termination as to Mother, Mother's counsel further tried to clarify the Department's position on termination and whether it would still seek termination if Mother agreed

to the placement of M.A.C. to Y.M. Mother's counsel established through its questioning that the Department knew Mother was completing drug testing for probation, that Y.M. did not want to work with or communicate with Mother even though Mother wanted to communicate with Y.M., and that in-person contact with Mother would be in M.A.C.'s best interest. Thus, throughout trial, Mother's counsel advocated that Mother was completing services, even though she was doing so outside of CPS's requests, and that terminating her rights instead of allowing her visitation and access to M.A.C. would adversely affect M.A.C.

We cannot conclude that counsel's performance fell outside the wide range of reasonable professional assistance and, thus, was deficient. Therefore, Mother has failed to establish that she was denied the effective assistance of counsel under the *Strickland* test, and we overrule her third issue.

## Denial of Due Process

Mother argues in her fourth issue that her due process rights were violated. Within this argument, Mother reiterates her contention that the Department abandoned its pleading seeking termination of Mother's parental rights and, thus, the trial court should not have proceeded to a termination trial. She argues that, because the trial court insisted on proceeding to a termination trial and muted and temporarily removed her from the Zoom hearing, she did not receive a fair and impartial trial by a neutral judge. Mother also asserts that the Department was not candid during trial or during the thirty days following the final order being signed

–29–

regarding information the Department learned about Y.M. that resulted in the Department denying Y.M.'s home study and removing M.A.C. from her home. To support this contention, Mother refers to the home study attached to her brief as appendix 2. According to Mother, the Department did not file the denied home study with the trial court until January 20, 2023.

The docket sheet in the appellate record does not include an entry showing the Department filed the denied home study, and the denied home study is not a part of the record. We are not permitted to consider documents outside of the appellate record in our review. *In re H.K.D.*, No. 05-18-00968-CV, 2020 WL 428152, at *2 (Tex. App.—Dallas Jan. 28, 2020, no pet.) (mem. op.) (citing *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 198 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Mother compares the Department's failure to disclose this information to a *Brady* violation—the State's failure to disclose material information in a criminal case. *See Brady v. Maryland*, 373 U.S. 83 (1963). However, Mother has not provided any authority, and we have found none, in which a court of appeals may consider new evidence on appeal regarding the termination of parental rights.

Because we are prohibited from considering documents that are not included in the appellate record and because we have already determined the trial court did not err in proceeding to a termination trial, we cannot conclude that Mother's due process rights were violated. We overrule Mother's fourth issue.

**Modification of Termination Order**

In her eighth issue, Mother asks this Court to modify the final order of termination to properly reflect the dates she is to receive email communications regarding M.A.C. According to Mother, the final order omits one of the agreed dates that she would receive updates—April 1. The Department agrees.

This Court has the power to modify a judgment to speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *In re M.D.*, 333 S.W.3d 600, 601 (Tex. App.—Dallas 2007, no pet.); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc).

At the conclusion of trial, the trial court announced that it was naming Mother as a non-parent possessory conservator for access, specifically to receive a general description and pictures of M.A.C. on February 1, April 1, July 1, September 1, and December 1 of each year. The final order, however, provides that Mother "shall receive photos/pictures of the child and an update on the child's welfare from [Y.M.] on February 1, July 1, Sept 1 and Dec 1 of each year." As represented by the parties, the order is missing April 1. Therefore, we sustain Mother's eighth issue and modify the final order to reflect that Mother receive email communications on "February 1, April 1, July 1, September 1, and December 1 of each year."

**Conclusion**

Having overruled Mother's first seven issues and having sustained her eighth, we modify the final order of the trial court to properly reflect each of the five months

–31–

Mother is to receive emails regarding M.A.C. and otherwise affirm the final order terminating Mother's parental rights and appointing the Department as managing conservator of M.A.C.

/Craig Smith/
CRAIG SMITH
JUSTICE

221262F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.A.C., JR., A CHILD,

No. 05-22-01262-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas Trial Court Cause No. JC-21-00276-W.
Opinion delivered by Justice Smith. Justices Pedersen, III and Goldstein participating.

In accordance with this Court's opinion of this date, the final order of the trial court is **MODIFIED** as follows:

The sentence on page 8, section 10 of the November 17, 2022 Final Order in Suit Affecting the Parent-Child Relationship and Order of Termination that reads, "**IT IS ORDERED** that **JASMINE GUICE** shall receive photos/pictures of the child and an update on the child's welfare from Yolis Marquez on February 1, July 1, Sept 1 and Dec 1 of each year," is modified to read: "**IT IS ORDERED** that **JASMINE GUICE** shall receive photos/pictures of the child and an update on the child's welfare from Yolis Marquez on February 1, April 1, July 1, September 1, and December 1 of each year."

It is **ORDERED** that, as modified, the final order of the trial court is **AFFIRMED**.

We DIRECT the trial court to prepare a corrected final order that reflects this modification.

Judgment entered this 5th day of May 2023.